UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 15 |
| | ) | |
| WILLIAM H. MILLARD, | ) | Case No. 13-11625 (REG) |
| | ) | |
| Individual Debtor in a | ) | |
| Foreign Proceeding | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 15 |
| | ) | |
| PATRICIA H. MILLARD, | ) | Case No. 13-11626 (REG) |
| | ) | |
| Individual Debtor in a | ) | |
| Foreign Proceeding | ) | |

## ERRATA ORDER RE DECISION ON PETITION FOR RECOGNITION

This matter having come up on the Court's own motion, it is **ORDERED**:

The Court's Decision on Petition for Recognition, dated November 21, 2013, is corrected in the respects noted below:

- Page 10 (Bankruptcy Reporter page 651), Section (2) titled "Public Policy of the U.S.",

  fifth paragraph:

  o Delete the second appearance of the word "has".[1]

- Page 14 (Bankruptcy Reporter page 654), footnote 30:

  o Change the reference from n.16 to nn. 18 & 19.

Future references to this decision shall be to the decision as corrected, a copy of which is attached as Exhibit A.

Dated: New York, New York          ***s/ Robert E. Gerber***
      January _**17**_, 2014          United States Bankruptcy Judge

---

[1] The sentence should now read: "Nor, even if one looks at the issues more broadly, has the Marianas shown any exceptional circumstances concerning matters of fundamental importance to warrant invoking section 1506 to deny recognition."

# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 15 |
|  | ) |  |
| WILLIAM H. MILLARD, | ) | Case No. 13-11625 (REG) |
|  | ) |  |
| Individual Debtor in a | ) |  |
| Foreign Proceeding | ) |  |

---

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 15 |
|  | ) |  |
| PATRICIA H. MILLARD, | ) | Case No. 13-11626 (REG) |
|  | ) |  |
| Individual Debtor in a | ) |  |
| Foreign Proceeding | ) |  |

---

DECISION ON PETITION FOR RECOGNITION[1]

APPEARANCES:
JAMES H. POWER, ESQ.,
WARREN E. GLUCK, ESQ.
HOLLAND & KNIGHT LLP
*Counsel for Foreign Representatives Kenneth M. Krys and Margot McInnis*
31 West 52nd Street
New York, New York 10019
By:     James H. Power, Esq. (argued)

MICHAEL S. KIM, ESQ.
KOBRE & KIM LLP
*Counsel for Creditor, United States Territory, Commonwealth of the Northern Mariana Islands*
800 Third Avenue
New York, New York 10022
By:     Marcus J. Green, Esq. (argued)
            Michael S. Kim, Esq.

---

[1]     This written decision memorializes the oral decision that I issued after the close of oral argument.  Because it had its origins in the originally dictated decision, it speaks as of the time that I issued the original oral decision, and has a more conversational tone.

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

In this case under chapter 15 of the Bankruptcy Code, petitioners Kenneth M. Krys and

Margot Macinnis (the "**Foreign Representatives**"), the foreign representatives of the estates of

Cayman Islands residents William H. Millard and Patricia H. Millard (the "**Millards**"), seek

recognition by this Court of the Millards' Cayman Islands bankruptcy proceeding ("**Cayman**

**Bankruptcy Proceeding**") as a "foreign main proceeding" under section 1517 of the Code.

The Foreign Representatives' motion is opposed by the Commonwealth of the Northern

Mariana Islands (the "**Marianas**"), a United States territory, which in 1994 obtained two default

judgments, in the amount of approximately $18 million each, against the Millards for unpaid

taxes.[2]  The Marianas opposes recognition of the Foreign Representatives' chapter 15 petition

based on two assertions that were set forth in its brief, and a third that was made only orally at

argument today.  The Marianas asserts:

> (1) that the petition fails to meet chapter 15's statutory standards for
>
> obtaining recognition;
>
> (2) that recognition should be denied on public policy grounds; and
>
> (3) that alleged "bad faith" on the part of the Foreign Representatives—
>
> because they wish to secure judicial review of the propriety of the default
>
> judgments without posting a bond—justifies denial of recognition.

The Marianas further contends that if I do grant recognition, my order should include conditions

nevertheless requiring the Foreign Representatives to post a bond.

---

[2]    The Marianas asserts that, after nearly 20 years of interest and penalties, the Millards now owe more than $118 million.

I'm rejecting those contentions, and granting recognition.  The Foreign Representatives have met all of the statutory requirements for it.  The Marianas has not established any basis for a finding that recognition is or would be contrary to the public policy of the United States—especially *manifestly* contrary to U.S. public policy, as chapter 15 requires.  And the bad faith that is alleged to exist is not a legal basis for disregarding the statutory requirements for recognition (although it might later provide a basis for subsequent relief under section 305, which could cause recognition to be later vacated), and, as a factual matter, the Foreign Representatives' desire to seek judicial review of the propriety of the default judgment without posting a bond does not cause me to find bad faith.  Finally—as a matter of my discretion, rather than one of law—I will not require the Foreign Representatives to engage in the unheard of requirement to post a bond before allowing chapter 15 recognition.

Thus the Foreign Representatives' motion for recognition is granted.  My Findings of Fact and Conclusions of Law in connection with this determination follow.

## Findings of Fact

The facts with respect to the recognition motion before me (as contrasted to matters that may be litigated by the parties in subsequent proceedings) are undisputed.  Under my case management order, facts not disputed in motions and motion related papers are taken as true.[3] Those facts come from undisputed assertions of fact in the motion papers; undisputed evidence in declarations by Kenneth M. Krys, Kyle Broadhurst, Michael A. Pineiro, James Stenning, Michael S. Kim, David Smith, and J. Ross McDonough; and matters as to which I can take judicial notice under Federal Rule of Evidence 201.

---

[3]     *See* Case No. 13-11625, ECF #18 (Case Management Order) at ¶ 2.

As facts I find that the Millards moved from the mainland U.S. to the Marianas in 1986. Mr. Millard was the founder and majority shareholder of Computerland Corporation, which operated a worldwide chain of retail computer and electronic stores. The Millards sold their interest in that company in 1986 for about $76.8 million. The Millards lived in the Marianas from 1986 through 1990.

In 1993, after the Millards had left the Marianas, the Marianas brought an action against them, for alleged tax liabilities, after notice only by publication.[4] As previously noted, in 1994 the Marianas obtained two default judgments against the Millards for approximately $18 million each, and the Marianas asserts that after nearly 20 years of interest and fees, the Millards now owe the Marianas more than $118 million.

In 1993, the Millards moved to the Cayman Islands, where (though they are citizens of Ireland) they have lived for the last 20 years. They have not lived in any jurisdiction other than the Cayman Islands since 1993. I find as a fact, or mixed question of fact and law, that the Cayman Islands is the Millards' Center of Main Interests ("**COMI**") as that expression is used in chapter 15.

Beginning in 2011, the Marianas initiated proceedings to enforce its default judgments against the Millards in the U.S. and around the world. On May 10, 2013, the Millards filed a bankruptcy petition in the Grand Court of the Cayman Islands ("**Cayman Court**"). The Foreign Representatives filed a chapter 15 petition for recognition of the Cayman Bankruptcy Proceeding in this Court on May 16, 2013. On June 3, 2013 (over the opposition of the Marianas, which had

---

[4]     The Millards allege that they never got notice of the Marianas' suit when it was filed in 1993 (and in fact before 2011, when one of their banks accidentally violated a gag order and revealed the Marianas' collection efforts); that the Marianas submitted a false affidavit concerning its efforts to locate the Millards in support of its application for an order permitting service by publication; and that the Marianas served the Millards by publication when the Marianas could have given notice to their lawyers. They also make other charges, including allegations of alleged corruption in the Marianas. All of these are matters as to which I make no findings.

-4-

argued in the Cayman Islands, through Cayman counsel, that the Cayman court should not

entertain the Millards' bankruptcy petition there), the Cayman court issued a written judgment[5]

that the Millards' insolvency petition was valid and that the Cayman Bankruptcy Proceeding

would continue there.

Conclusions of Law

*(1) Statutory Requirements for Recognition*

The Marianas first contends that the Foreign Representatives have not met the statutory

requirements for chapter 15 recognition.  The Marianas argues that chapter 15 may be used to

grant recognition only in a foreign "*insolvency*" case.  The Marianas then argues that I should

make my own finding as to the Millards' insolvency, or alternatively find that the Cayman

Bankruptcy Proceeding is not really an insolvency proceeding at all—all based on the Marianas'

contention that I should not count the Millards' tax obligation in considering their solvency, as

tax obligations are not provable as debts in the Caymans and, to the extent it matters, the U.S.

Since the Marianas believes that it will not be able to prove its claims for its $118 million in

foreign tax judgments in the Cayman Court, the Marianas asserts that the Millards are not

"insolvent" in the Cayman Bankruptcy Proceeding, and that therefore there is no "foreign

insolvency proceeding" for me to recognize.

I can't agree, and find, to the contrary, that all of the statutory requirements for

recognition in the U.S. have been satisfied.

Section 1517 provides, in relevant part:

> (a) Subject to section 1506, after notice and a hearing, an
> order recognizing a foreign proceeding shall be entered if—

---

[5]    A "judgment," as used in the Cayman Islands and many Commonwealth countries, is equivalent to an "Opinion" or a "Decision" as we use those expressions in the U.S.

(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;

(2) the foreign representative applying for recognition is a person or body; and

(3) the petition meets the requirements of section 1515.

(b) Such foreign proceeding shall be recognized—

(1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests; or

(2) as a foreign nonmain proceeding if the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending.

The presence, or not, of a "foreign proceeding" as used in section 1517(a)(1), as ultimately defined in section 101(23),[6] determines whether I should grant recognition here.[7]

Section 101(23) defines a "foreign proceeding" as:

---

[6]    Section 1502 of the Code provides, in relevant part:

For the purposes of this chapter, the term—

. . .

(3) "foreign court" means a judicial or other authority competent to control or supervise a foreign proceeding;

(4) "foreign main proceeding" means a foreign proceeding pending in the country where the debtor has the center of its main interests;

(5) "foreign nonmain proceeding" means a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment . . . .

Strictly speaking, application of section 1517 requires first going to section 1502, and then going to section 101(23).

[7]    For understandable reasons, there are no contentions of failures to satisfy sections 1517(a)(2) and (3):  that the Foreign Representatives be "person[s]," as required under subsection (a)(2), and that their petition satisfy the requirements (addressing satisfactory documentation, and the need of U.S. courts for documents in English) imposed by subsection (a)(3).

> [A] collective judicial or administrative proceeding in a
> foreign country, including an interim proceeding, under a
> law relating to insolvency or adjustment of debt in which
> proceeding the assets and affairs of the debtor are subject to
> control or supervision by a foreign court, for the purpose of
> reorganization or liquidation.

The Cayman Bankruptcy Proceeding is plainly that.

The Marianas' odd contention—that I must ignore the fact that the Millards are in a Cayman insolvency proceeding based on the suggested view the Marianas would have me take as to their solvency—is unsupported by the statute or caselaw, and runs contrary to the leading treatise in the U.S. bankruptcy community.  Section 1501 confirms Congress' objectives of encouraging cooperation between the U.S. and foreign countries in order to protect the interests of debtors and creditors in international bankruptcy proceedings.[8]  But it is *section 1517* that sets the requirements for granting recognition of a foreign proceeding.  I look to the requirements of Section 1517 and (after an intermediate stop at section 1502) section 101(23) of the Code to determine whether the Cayman Bankruptcy Proceeding passes muster for recognition under the requirements of U.S. law.

Likewise, *Collier* explains that "[t]he words 'under a law relating to insolvency or adjustment of debt' [in section 101(23)] emphasize that chapter 15 is available not only to debtors that are technically insolvent or facing liquidation, but also to debtors who are in financial distress and may need to reorganize."[9]

As the statutory language makes clear, it is the *nature of the proceeding that is the subject of the request for assistance*, and not the view of the U.S. court of the foreign debtor's condition, that governs the inquiry. The Marianas asks me to disregard the nature of the Cayman

---

[8]     *See* 8 *Collier on Bankruptcy* ¶ 1501.01 (16th ed. 2013) ("***Collier***").

[9]     8 *Collier* ¶ 1501.03[1], citing H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 118 (2005).

insolvency proceeding, and to look behind a judgment of the Cayman Court.  Doing either is

plainly improper.  The Millards' Cayman bankruptcies are collective judicial proceedings in the

Cayman Islands, conducted pursuant to the Caymans' bankruptcy law, in which the assets of the

Millards are subject to the Foreign Representatives' exclusive control under the supervision of

the Cayman Court for the purpose of reorganization and liquidation.  The Marianas cites no

authority to contradict *Collier*'s observation (and the House Report on which it was based) that a

foreign debtor in a foreign insolvency proceeding need not be insolvent to take advantage of

chapter 15 recognition.  Nor am I aware of any.  That is hardly surprising, because it would

require a rewriting of the U.S. statute.

The Cayman Court has determined that the Millards are eligible to conduct bankruptcy

proceedings in the Cayman Islands under Cayman's bankruptcy law.  The Cayman Bankruptcy

Proceeding is a foreign proceeding under Section 101(23), and is eligible for recognition under

section 1517.[10]

*(2) Public Policy of the U.S.*

The Marianas next argues that recognition should be denied pursuant to section 1506,

which authorizes a U.S. court to deny recognition if the action "would be manifestly contrary to

the public policy of the United States."[11]  In support of that argument, the Marianas contends that

---

[10]     It also is clear that the Cayman Islands is the Millards' COMI.  They have resided in the Cayman Islands
for the last 20 years—putting the COMI issue beyond debate.  *See In re Ran*, 607 F.3d 1017, 1022–26 (5th
Cir. 2010) ("***Ran***") (determining COMI based on individual debtor's place of habitual residence).  Unlike
other cases in which judges, including me, have had to wrestle with COMI issues in the past, *see, e.g.*, *In re
Bear Stearns High–Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122 (Bankr. S.D.N.Y.
2007); *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37 (Bankr. S.D.N.Y. 2008) (Gerber, J.), where
foreign debtors' businesses were organized under the law of the Cayman Islands but their assets or
principal places of business were located elsewhere, COMI is not an issue here.

[11]     Section 1506, which applies broadly to actions governed by chapter 15 (including, but not limited to, grants
of recognition), provides, in full:

Nothing in this chapter prevents the court from refusing to take an
action governed by this chapter if the action would be manifestly
contrary to the public policy of the United States.

-8-

"[t]he aim of the Cayman insolvency in this petition is to achieve an unsecured stay of enforcement of the Commonwealth's judgments to enable the Foreign Representative to safely liquidate the Millards' worldwide assets and move them back to Caymans (where they will be insulated against the Commonwealth's claim, because foreign tax judgments are unenforceable)."[12]

That characterization of the Foreign Representatives' goals combines two alleged offenses:  (1) obtaining an unbonded stay, and (2) insulating assets from legitimate creditor claims.  U.S. assistance to one or both of those goals is asserted to be "manifestly contrary" to the public policy of the U.S.  But U.S. assistance with respect to the first of the asserted goals is not at all contrary to U.S. public policy, much less "manifestly" so.  And it is too soon to know whether there will ever be a basis for a finding of insulating assets; there certainly is no indication of that now.

The "statutory mandate"[13] that recognition be granted upon compliance with the requirements of sections 1517(a)(1), (2) and (3) is—as section 1517 provides and caselaw holds—indeed subject to a public policy exception, said by the Fifth Circuit to be "narrow."[14] As noted above,[15] section 1506 permits a court to refuse recognition "if the action would be manifestly contrary to the public policy of the United States."[16] But "the exception is intended to

---

[12]      Case No. 13-11625, ECF #20 (Marianas' Mem. in Opposition to Recognition) at 11.

[13]      *Ran*, 607 F.3d at 1021.

[14]      *Id.*

[15]      *See* n.11.

[16]      *Ran*, 607 F.3d at 1021 (quotes in original).

be invoked only under exceptional circumstances concerning matters of fundamental importance for the United States."[17]

The ability to take an appeal without posting of a supersedeas or similar bond is not at all contrary to U.S. public policy, much less is it "manifestly" so.  Section 362 effectively provides for such for garden variety U.S. debtors.  The avoidance of a supersedeas bond was a major goal in the famous *Texaco* chapter 11 case in this district.[18]  And even in the absence of bankruptcy, U.S. trial judges have the discretion to stay enforcement of money judgments without the posting of a supersedeas bond.[19]

Nor, even if one looks at the issues more broadly, has the Marianas shown any exceptional circumstances concerning matters of fundamental importance to warrant invoking section 1506 to deny recognition.  No showing has been made that the Caymans' insolvency law is in any way repugnant to U.S. law.  Likewise, no showing has been made that Cayman's procedural protections for creditors vary materially from U.S. insolvency law, much less that they are repugnant to U.S. law.  The ability to enforce a default judgment is not a fundamental

---

[17]    *Id.  See also In re Iida*, 377 B.R. 243 (B.A.P. 9th Cir. 2007) ("This public policy exception is narrow and, by virtue of the qualifier "manifestly," is limited only to the most fundamental policies of the United States")*; In re Ephedra Prods. Liability Litig.*, 349 B.R. 333 (S.D.N.Y. 2006) (Rakoff, J.) ("In adopting Chapter 15, Congress instructed the courts that the exception provided therein for refusing to take actions "manifestly contrary to the public policy of the United States" should be "narrowly interpreted," as "[t]he word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States").

[18]    *See, e.g., In re Texaco, Inc.,* 76 B.R. 322, 324 (Bankr. S.D.N.Y. 1987) (Schwartzberg, J.) (extending plan exclusivity because, *inter alia,* the adverse impact of a multi-billion judgment upon the liquidity and financial condition of Texaco impelled Texaco and its two financial subsidiaries to seek Chapter 11 relief, "especially in light of Texaco's stated inability to post a bond or other security necessary to stay enforcement of the judgment").

[19]    *See, e.g., Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133 (2d Cir. 1986) ("The court may order partially secured or unsecured stays if they do not unduly endanger the judgment creditor's interest in ultimate recovery.") (internal quote marks deleted); *Teachers Ins. & Annuity Ass'n of America v. Ormesa Geothermal,* 1991 WL 254573, at *3 (S.D.N.Y. Nov. 21, 1991) (Wood, C.J.) ("In spite of the general requirement that a judgment debtor post a supersedeas bond in the full amount of the judgment . . . the district court, in its discretion, may use equitable principles to grant such a stay without a full bond if the filing of a supersedeas bond would irreparably harm the judgment debtor and, at the same time, such a stay would not unduly endanger the judgment creditor's interest in ultimate recovery." (internal quote marks deleted).

public policy of the United States. In fact, the imposition of default judgments is disfavored in U.S. courts.[20]

It is not contrary to U.S. public policy to seek judicial review of whether a default judgment should have been entered, or to scrutinize the propriety of service by publication, the need for service by publication, or the extent to which known lawyers for a defendant should have been given notice as an alternative to relying solely upon notice by publication.[21] Nor is it a fundamental public policy of the U.S. to allow for the enforcement of foreign tax judgments, since under the U.S. law, foreign tax debts are disallowed too, under our own nation's "Revenue Rule."[22]

On the other hand (and as relevant to the Mariana's second premise), allowing debtor assets to be placed beyond the reach of the debtor's creditors might well be manifestly contrary to the public policy of the U.S. But we are far away from that coming to fruition. The Foreign Representatives here ask no more than (1) access to the U.S. courts, and (2) temporary restraints against asset grabbing while they seek judicial review of the default judgments' propriety in other U.S. courts.[23] Assuming that the Foreign Representatives are diligent in seeking to secure that review elsewhere, they may continue to have that protection here, fully consistent with U.S.

---

[20]    *See Percarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001) ("It is well established that default judgments are disfavored").

[21]    U.S. law *requires*, in instances where notice is required, that it be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cen. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). And notice must employ "means ... such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315. Notice by publication may be inadequate when it is not reasonably calculated to reach those "who could easily be informed by other means at hand." *Id.*

[22]    See, for example, my own decision on this topic, *In re BearingPoint, Inc.*, 2010 Bankr. LEXIS 3964, 2010 WL 4622458 (Bankr. S.D.N.Y. Nov. 5, 2010) disallowing, under the Revenue Rule, two tax claims filed by the Republic of Indonesia in a chapter 11 case.

[23]    I've previously announced that I will not sit as a court of appeals with respect to the 1994 entry of the default judgment. Review of the propriety of entry of the default judgments, when the Marianas allegedly had the ability to, but did not, provide actual notice by means other than publication, will necessarily have to take place elsewhere, in the District of the Marianas, the Ninth Circuit, or the U.S. Supreme Court.

public policy.[24]  If the default judgments are found to be valid after appropriate judicial review, and if it then appears—though this would surprise me[25]—that proceedings in the Caymans or this Court would be used to shelter assets in the U.S. without subjecting them to legitimate debts, the Marianas could come back to me to seek dismissal of this chapter 15 case under section 305.[26] The Marianas' apprehension that the Foreign Representatives will shield assets is an issue that may be brought to my attention—or better yet, in the Cayman Court—if and when facts supporting such a concern should occur.

In actuality, the Foreign Representatives here seek recognition of the Cayman Bankruptcies (1) so they may have standing to access the U.S. courts pursuant to section 1509 of the Code (it being remembered that recognition is a *sine qua non* for access to the U.S. courts),[27]

---

[24]    *See* nn. 18 and 19 above, discussing the ability, in the U.S., to obtain protection from the enforcement of judgments while appeals are pending elsewhere, and without necessarily posting a full, or even any, supersedeas bond.

[25]    The Foreign Representatives state in their reply, *see* Case No. 13-11625, ECF #25 (Foreign Representatives' Reply Mem.) at 10, that they are not empowered to move Millard assets located outside the Cayman Islands into the Caymans without first making an application to the Cayman Court.

[26]    That section provides, in relevant part:

        (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

                (1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or

                (2)(A) a petition under section 1515 for recognition of a foreign proceeding has been granted; and

                    (B) the purposes of chapter 15 of this title would be best served by such dismissal or suspension.

[27]    Section 1509 of the Code, captioned "Right of direct access," effectively establishes the bankruptcy court as a gatekeeper for a foreign representative's access to the U.S. courts, with recognition as the means to open the gate.  Section 1509 provides, in relevant part:

        (b) If the court grants recognition under section 1517, and subject to any limitations that the court may impose consistent with the policy of this chapter—

                (1) the foreign representative has the capacity to sue and be sued in a court in the United States;

-12-

and (2) to protect against asset grabbing in the U.S., which is a traditional basis for the
invocation of chapter 15 relief.

Importantly, to the extent that the Marianas is arguing before me that the Millards should
not have been permitted to file the Cayman Bankruptcy Proceeding, this forum is not an
appropriate venue to collaterally attack the Cayman judgment.[28]

*(3) "Bad Faith"*

The Marianas then argues (not so much in its brief, but in oral argument today), that I can
and should find *bad faith* on the part of the Foreign Representatives.  The Marianas then argues
that the bad faith, when found, should cause me to deny recognition.  I do not agree with the
legal premise that "bad faith" can result in the denial of recognition, nor do I agree that even if I
could find bad faith to be a basis for denying recognition, it would provide a basis for denial of
recognition here.

First, as a threshold matter, section 1517 of the Code, quoted above, provides in its
subparagraph (a) that subject to section 1506, an order recognizing a foreign proceeding *shall* be
entered if the requirements in the three subparagraphs of section 1517(a) have been satisfied.
Because section 1517(a) is preceded by the word *shall*, it takes away judicial discretion from me
in the first instance.  That is not necessarily the end of the inquiry—because after recognition has

---

(2) the foreign representative may apply directly to a court in
the United States for appropriate relief in that court; and

(3) a court in the United States shall grant comity or
cooperation to the foreign representative.

. . .

(d) If the court denies recognition under this chapter, the court may
issue any appropriate order necessary to prevent the foreign
representative from obtaining comity or cooperation from courts in the
United States.

[28]    *See In re Bd. of Directors of Telecom Argentina S.A.*, 2006 WL 686867, at *27 (Bankr. S.D.N.Y. Feb. 24,
2006) (Lifland, C.J.), *aff'd*, 2006 WL 3378687 (S.D.N.Y. Nov. 20, 2006), *aff'd*, 528 F.3d 162 (2d Cir.
2008) (Argentine court's determination that debtor was insolvent may not be collaterally attacked).

been granted, section 305 provides additional mechanisms for changing that—but section 1517(a) imposes a mandatory requirement, in the first instance, for recognition when its requirements have been met.

I also note that when 1517(a) says it's "subject to" one thing—section 1506, which as we know from our earlier discussion is the public policy exception—that sends a message to the judiciary that *it is not subject to other things that were not so included*.[29]  Otherwise, section 1506 would not be resting there by itself.  Instead, section 1506 would have been joined by whatever other things were meant to be included as matters which section 1517 was "subject to," such as the "good cause" requirements, or dismissal for cause requirements, that appear in other sections of the code in chapters 7, 11 and 13.  Of course, neither "bad faith" nor "good faith" is mentioned in section 1517.

In any event, I do not find the requisite bad faith.  The principal basis for the contention of bad faith is that the Foreign Representatives are looking for protection against asset seizure without posting a bond.  That is not bad faith.  As previously noted, bankruptcy courts rarely, if ever, impose requirements for supersedeas bonds on debtors or estate fiduciaries, as bonds would require the availability and use of scarce estate resources and wholly frustrate bankruptcy policy.  Indeed, that's one of the reasons why the Code includes an automatic stay applicable to U.S. debtors in its section 362.  Filing an insolvency proceeding in a U.S. court to avoid an onerous bond requirement is a fully permissible purpose, and is hardly indicative of bad faith.  *Texaco*[30]

---

[29]     When Congress does not want to limit a list, it uses the words "includes" or "including," which are not limiting. Bankruptcy Code section 102(3). As examples, see Bankruptcy Code sections 1112(b)(4) (cause for dismissal); 707(a) (same); 1307(c) (same).

[30]     *See* nn. 18 & 19 above.  *See also Kirk v. Texaco, Inc.*, 82 B.R. 678, 679–80 (S.D.N.Y. 1988) (Brieant, J.) (providing a history of the Texaco bankruptcy case).

is only the most famous example of that.  Nor is it indicative of bad faith to secure a breathing spell while appellate mechanisms elsewhere are pursued.[31]

That also informs a matter that actually is within my discretion—the Marianas' additional contention that if I nevertheless grant recognition, I still require the Foreign Representatives, under section 1522 of the Code,[32] to post a bond.  I assume that section 1522, given its breadth, authorizes a court like mine to require a bond in appropriate cases as a matter of discretion.  But there appears to be no case—certainly none was brought to my attention— where a foreign representative was required to post a bond to obtain recognition (or to enjoy the fruits of recognition), and I am not going to do that here either.  As I've noted, if this case had been filed in chapter 11, an automatic stay would stay judgment enforcement without requiring the debtor to post a bond.  And using the bankruptcy system to avoid the need to post a bond is, as *Texaco* indicates, an appropriate resort to U.S. insolvency law.[33]

The express provisions of chapter 15, and the purposes underlying it, authorize and contemplate providing support to the Cayman Bankruptcy Proceeding; protecting U.S. assets from being grabbed (even without a bond); and allowing an opportunity to come into the U.S. courts.

---

[31]    Significantly, the Foreign Representatives here are not asking me to review the Marianas' judgment, a measure that would be of much more serious consequence.

[32]    Section 1522 provides, in relevant part:

> (b) The court may subject relief granted under section … 1521 [which addresses relief that may be granted upon recognition] … to conditions it considers appropriate, including the giving of security or the filing of a bond.

[33]    I will, however, express my expectation that the Foreign Representatives must act diligently in commencing proceedings to determine the validity of the default judgment that was entered by the Marianas Court.  As I've noted, section 305 of the Code permits a court to dismiss or suspend proceedings in a case if a petition for recognition has been granted and the purposes of chapter 15 would be best served by such dismissal or suspension.

The Marianas has a reservation of rights as to the ability to later seek section 305 relief (as do the Foreign Representatives with respect to any desire to oppose any such request, if and when it is made)—though I should say that I would be annoyed, to say the least, if I get any such request from the Marianas before the Foreign Representatives have had a full and fair opportunity to secure judicial review of the default judgment elsewhere.

Except, however, for expressly providing for the reservations of rights, the latter comments are precatory. The order granting recognition should provide that recognition is granted; that the separate request for a bond under section 1522 is denied; and that this order is without prejudice to the rights of the parties with respect to any subsequent request under section 305 to dismiss the chapter 15 case if it later appears that the Foreign Representatives are not acting diligently to secure judicial review of the underlying judgment elsewhere.

Dated: New York, New York
   November **21**, 2013

      **_s/Robert E. Gerber_**
      United States Bankruptcy Judge